IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DONALD OSBORNE II and
JOSH CARTLEDGE,

        Plaintiffs,

v.                                           Case No. SA-18-CV-0668-JKP

AECOM,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant's Motion for Summary Judgment* (ECF No. 36). Pursuant to Fed. R. Civ. P. 56(a), Defendant AECOM seeks summary judgment on Plaintiffs' Donald Osborne ("Osborne") and Josh Cartledge ("Cartledge")[1] claim for retaliation under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.051, et seq. Plaintiffs have responded to the motion, *see* ECF No. 38, and Defendant has filed a reply brief, *see* ECF No. 40. After considering the briefing, the summary judgment evidence, and the applicable law, the Court GRANTS the motion for the reasons that follow.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The alleged conduct giving rise to this litigation arose while Plaintiffs worked for AECOM Technical Services, Inc. providing environmental services for the United States armed forces serving in Afghanistan. As stated in a prior court order, Cartledge was hired in January 2014 and became the Incinerator/Solid Waste Disposal Manager, whereas Osborne was hired in 2015 as a

---

[1] When the Court refers to both Osborne and Cartledge collectively it will simply refer to them as "Plaintiffs."

[2] Unless noted otherwise, the factual background is undisputed or viewed in the light most favorable to the non-movant as required when ruling on a motion for summary judgment.

Safety Manager on a project in Afghanistan for AECOM's subsidiary, URS Corporation. *See* ECF No. 32.

As alleged in their Amended Complaint (ECF No. 11), the substance of Plaintiffs' retaliation claim stems from two encounters between Osborne and his co-worker Rodney Hickmon ("Hickmon") on October 16, 2016. First, Hickmon accused Osborne of throwing items at his door during the night. The second encounter occurred at approximately 5:00 p.m. when Hickmon accused Osborne of lying about throwing items at his door. Plaintiffs allege that Hickmon berated Osborne and threatened to assault him. Cartledge was awakened by Hickmon's screaming and he overheard Hickmon's threat to assault Osborne. That same day, Osborne filed a formal "harassment" complaint regarding his encounters with Hickmon to his supervisors John Scherer and James Pratt ('Pratt"), the Project Manager for AECOM.

On November 9, 2016, Osborne sent an email to Pratt regarding his complaint. Pratt did not respond to Osborne's October 16th complaint or the November 9th email. On November 11, 2016, Osborne forwarded his complaint to AECOM's Ethics Hotline. As shown by summary judgment evidence attached as Exhibit B to the motion, (ECF No. 38-2), neither the original complaint (October 16th) nor the Ethics Hotline complaint (November 11th) alleges a claim of gender discrimination.

In the months following the October 16, 2016 encounters, AECOM investigated Plaintiffs' complaints. Plaintiffs allege AECOM retaliated against them for complaining about Hickmon. Plaintiffs allege AECOM reduced their hourly pay by over twenty percent, they experienced greater scrutiny regarding their work, they were demoted, and their job responsibilities were reduced. Plaintiffs voluntarily resigned from AECOM and their last dates of employment were December 5, 2017, for Cartledge, and February 28, 2018, for Osborne.

On December 6, 2017, Plaintiffs filed suit in a Texas state court alleging causes of action against AECOM for retaliation; breach of contract; intentional infliction of emotional distress; and negligent hiring, retention, and supervision. On July 2, 2018, AECOM removed the case to federal court.

On September 4, 2018, the Court granted, in part, AECOM's first motion to dismiss Plaintiffs' claims. It dismissed all of Plaintiffs' claims with prejudice except for their TCHRA claim for retaliation. For that claim, it granted Plaintiffs fourteen days to provide additional supporting facts. After Plaintiffs amended their complaint, AECOM filed a second motion to dismiss under Fed. R. Civ. P. 12(b)(6). On January 8, 2019, AECOM also filed a motion under Fed. R. Civ. P. 12(b)(1) to challenge Plaintiffs' ability to bring a TCHRA retaliation claim for alleged retaliatory acts that occurred outside of Texas. On April 25, 2019, the Court held a hearing on these two motions. On May 16, 2019, the Court partially granted the Rule 12(b)(1) motion and denied the Rule 12(b)(6) motion. The May 16, 2019 ruling allowed Plaintiffs to move forward with only one claim: the "TCHRA claim for any allegedly retaliatory conduct that occurred while Mr. Pratt was physically supervising and managing Plaintiffs from Texas." Consequently, the Court will not consider any complaints about conduct by Joe Bob Cravens in Afghanistan, including alleged greater scrutiny regarding Plaintiffs' work and reduction in job responsibilities. Mr. Cravens had replaced John Scherer as the Task Order Manager. Additionally, pursuant to the May 16, 2019 order, the Court will not consider any complaints about Pratt's conduct while he was in Afghanistan. Based on prior court rulings, Plaintiffs' TCHRA retaliation claim is limited to conduct of Pratt that occurred in Texas.

On July 31, 2019, AECOM filed its motion for summary judgment seeking judgment as a matter of law on Plaintiffs' remaining retaliation claim. ECF No. 36. The motion is ripe for ruling.

## II. STANDARD OF REVIEW

A court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material," and a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact becomes "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When a party moves for summary judgment on claims on which the opposing parties will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovants' claims." *Armas v. St. Augustine Old Roman Catholic Church*, No. 3:17-CV-2383-D, 2019 WL 2929616, at *2 (N.D. Tex. July 8, 2019) (citing *Celotex Corp.*, 477 U.S. at 325).

In determining the merits of a motion for summary judgment, a court must view all facts

---

[3] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Further, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Anderson,* 477 U.S. at 254–55.

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn*, 832 F.3d at 234 (citation omitted). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

### III. DISCUSSION

Plaintiffs have asserted a retaliation claim under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.051, *et seq.* As referenced above, Plaintiffs allege AECOM retaliated against them for complaining about Hickmon. Specifically, they allege that

AECOM retaliated against them in response to their call to the company's ethics hotline regarding the encounters with Hickmon. Osborne stated:

> I feel that I am being retaliated against because I had to go to Ethics regarding the Rodney Hickmon Workplace Harassment Complaint and because of the inability and unwillingness of my Project manager/James Pratt to act as on my complaint as required and his inability to effectively communicate with his team.

ECF No. 38-4 at 129. Plaintiffs further allege AECOM would have handled their complaint about Hickmon differently if they were women. ECF No. 38 at 3.

The Texas Legislature modeled the TCHRA "after federal civil rights law" and the Act, "purports to correlate 'state law with federal law in the area of discrimination in employment.'" *Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) (per curiam) (quoting *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)). Accordingly, in interpreting the TCHRA and in analyzing TCHRA claims for retaliation, courts "look to federal and Texas state court precedent that applies the TCHRA and correlative federal law." *Parga v. ADT Sec. Servs.*, No. EP-15-CV-9-DB, 2016 WL 8919154, at *3 (W.D. Tex. Mar. 22, 2016).

One purpose of the TCHRA "is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments (42 U.S.C. Section 2000e *et seq*.)." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 530 (S.D. Tex. 1999) (citing Tex. Lab. Code Ann. § 21.001 and several cases). Courts interpret the TCHRA "in n a manner consistent with federal laws prohibiting employment discrimination" and retaliation. *See id.* "The substantive law governing Title VII and TCHRA retaliation claims is identical." *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014). Consequently, the same standards and analysis apply whether a claim is brought under the TCHRA or Title VII. *See Martin*, 65 F. Supp. 2d at 530.

Title VII prohibits employers from intentionally discriminating against any individual with respect to compensation, terms, conditions or privileges of employment based on the individual's

gender or other protected class. 42 U.S.C. § 2000e–2(a)(1); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Title VII also prohibits employers from retaliating against an employee for engaging in protected conduct, such as filing a complaint regarding discrimination or sexual harassment. 42 U.S.C. § 2000e-3(a). Similarly, the TCHRA makes it unlawful for an employer to retaliate "against a person who, under [Chapter 21]: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055.

Plaintiffs may establish retaliation through either "direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). When, as in this case, there is no direct evidence of unlawful discrimination or retaliation, a plaintiff must prove any such claim using circumstantial (or indirect) evidence pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The *McDonnell Douglas* burden-shifting framework applies to claims brought under the TCHRA. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).

To survive a motion for summary judgment under the *McDonnell Douglas* framework, a plaintiff must, first, establish a prima facie case of the asserted discrimination or retaliation. *McCoy*, 492 F.3d at 556. "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII [(or the TCHRA)]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id*. at 556-57. When the plaintiff has met "the 'minimal initial burden' of establishing a prima facie case," the "plaintiff is entitled to a 'presumption of discrimination'" or retaliation. *Reed*, 701 F.3d at 439 (quoting *Mission Consol.*

7

*Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) while addressing a discrimination claim); *accord Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 784 (Tex. 2018) (discussing presumption of retaliation).

Once the plaintiff carries the burden to make the "prima facie showing the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy*, 492 F.3d at 556-57; *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981). When the employer carries this burden, the presumption of retaliation dissipates, *Alamo Heights Indep. Sch. Dist.*, 544 S.W.3d at 783-84, and the burden shifts back to the plaintiff, *McCoy*, 492 F.3d at 557. At this final stage, to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine dispute of material fact that either: (1) the employer's proffered reason is not true but is instead a pretext for discrimination or retaliation; or (2) the reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.,* 482 F.3d 408, 411-12 (5th Cir. 2007); *McCoy*, 492 F.3d at 557; *Williams v. Time Warner*, 98 F.3d 179, 181 (5th Cir. 1996).

AECOM asserts it is entitled to summary judgment on Plaintiffs' retaliation claim as a matter of law based upon the following grounds: (1) Plaintiffs did not engage in any protected activity; (2) the alleged retaliatory acts do not constitute adverse employment actions, and in some cases, did not occur; (3) no causal relationship exists between the alleged protected activity and the alleged retaliation; (4) no actionable damages exist for the alleged retaliation; (5) Defendant was not the employer of Plaintiff; and (6) Plaintiffs failed to exhaust their administrative remedies. ECF No. 36 at 1-2. The Court need not address each of these and will assume, without deciding, that Plaintiffs engaged in protected activity. It finds that AECOM has carried its initial summary

judgment burden to point to an absence of evidence to support the retaliation claim. And, after a thorough review of the record, the Court finds that Plaintiffs have failed to present sufficient evidence to meet the adverse action prong of their prima facie case.

As currently relevant to this motion for summary judgment, Plaintiffs allege AECOM reduced their hourly pay by over twenty percent and they were demoted. To prove an adverse employment action in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moini v. Univ. of Tex. at Austin*, 832 F. Supp. 2d 710, 717 (W.D. Texas 2011) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

**A. Compensation**

Plaintiffs allege Pratt reduced their pay. Pratt served as AECOM's Project Manager for the company's work in Afghanistan. At Pratt's direction, Plaintiffs and other AECOM employees received a pay increase in 2017 when the company restructured employee compensation for the project. The compensation review process began in June 2016. ECF No. 36-1 at 31. AECOM sought to simplify timekeeping and accounting by treating all hours worked in Afghanistan in the same manner. The hourly rate for all employees was reduced to offset increases in other forms of compensation (e.g., hazard pay). On August 26, 2016, Pratt sent an email detailing the restructuring of employee compensation. AECOM employees were to receive the adjusted compensation in connection with their execution of a new assignment amendment letter. *Id*. at 32. Plaintiffs were included in the list of employees who received Pratt's email. *Id*. at 31. Pratt stated:

> Team, [T]his email is to advise you of an amendment to our project assignments that is currently being reviewed by HR and legal. The amendment will change the uplifts from 48 hours per week to 60 hours per week. Therefore we will only use one line (REG) for a week worked in Afghanistan when this change takes effect.

> The base hourly rate will be reduced, and hours receiving uplift will be increased. Overall compensation will stay the same, or slightly higher, with a greater percentage of your payroll coming as hazard pay. In making these hourly adjustments, we will take into account annual Fringe pay. Before this takes effect you will receive an assignment amendment letter and confirmed new timesheet instructions.

*Id*.

This email was sent approximately two months prior to the October 16, 2016 encounters that form the basis of Plaintiffs' claim. AECOM increased Cartledge's pay by $333.70 which made his total annual salary $148,554.88. ECF No. 36-1. AECOM increased Osborne's pay by $316.80 which made his total annual salary $153,820.80. *Id*. The undisputed summary judgment evidence demonstrates AECOM increased Plaintiffs' pay. Cartledge sent an email to Pratt thanking him for the increase in his pay. *Id*. The undisputed summary judgment evidence demonstrates AECOM did not reduce Plaintiffs' pay after October 16, 2016. As a matter of law, any adjustment in compensation could not have been made in response to Plaintiffs' complaints regarding Hickmon or alleged gender discrimination. Alleged adverse employment actions that predate the alleged protected activity cannot serve as a basis for a claim of retaliation. *Watkins v. Tex. Dep't of Crim. J.*, 269 F. App'x 457, 461 (5th Cir. 2008) (per curiam). Here, the decision to adjust Plaintiffs' pay upward occurred before the October 16th encounters. AECOM did not retaliate against Plaintiffs by reducing their pay.

**B. Demotion**

Plaintiffs allege they were demoted based on letters received when their pay was adjusted. On September 7, 2017, Cartledge sent an email to Pratt to clarify his status with AECOM. On that same date, Osborne contacted Anna Ochoa (AECOM's human resources department) regarding the significance of a change in his job title in the new International Agreement Letter. ECF No. 36-1 at 42. Pratt later informed Cartledge that he had not been demoted and directed AECOM's

human resources department to issue an amended letter correcting Cartledge's job title. *Id*. at 33-34. Similarly, on October 31, 2017, Ms. Ochoa informed Osborne he had not been demoted. Osborne testified that his job title was eventually corrected. *See* Dep. Osborne 154:20-25.

Plaintiffs have not presented any summary judgment evidence supporting their allegation that they were demoted.

## C. Constructive Discharge

In response to AECOM's motion for summary judgment, Plaintiffs allege they were constructively discharged. To the extent they intend to pursue the allegation as part of their retaliation claim, the Court will not entertain it because they did not raise it until their response. "A claim which is not raised in the complaint, but rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). The Court finds that Plaintiffs first raised the constructive discharge claim in response to AECOM's motion and, therefore, it is not properly before the Court.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** *Defendant's Motion for Summary Judgment* (ECF No. 36). Because Plaintiffs have not presented evidence to carry their burden to show a prima facie case of retaliation by AECOM, the Court dismisses the retaliation claim. Because this ruling results in the dismissal of the sole remaining claim in this action, the Court will enter judgment in favor of Defendant by separate document.

**It is so ORDERED this 11th day of March 2020.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**